The Honorable Sheilla E. Lampkin State Representative
350 Rabb Road Monticello, Arkansas 71655-8804
Dear Representative Lampkin:
I am writing in response to your request for my opinion on the following questions concerning Act 558 of 2011:
 1. Does Act 558 apply to ALL employees who have returned to work or does it just apply to those who have returned to work AFTER January 1, 2012?
 2. Does it also apply to ALL employees on the DROP [Arkansas Public Employees' Retirement System Deferred Retirement Option Plan], or just those who join the DROP after January 1, 2012?
RESPONSE
It is my opinion in response to your first question that Act 558 requires employer contributions for all those who, on and after January 1, 2012, meet the requirements of A.C.A. § 24-4-520 to be eligible for retirement. This includes those who returned to work before January 1, 2012, after terminating covered employment for the amount of time required by A.C.A. § 24-4-520 to retire. It is my opinion in response to your second question that the act requires employer contributions on behalf of all participants in the Arkansas Public Employees' Retirement System Deferred Retirement Option Plan (DROP), including those who elected to participate before Act 558's effective date. *Page 2 
Question 1 — Does Act 558 apply to ALL employees who havereturned to work or does it just apply to those who have returnedto work AFTER January 1, 2012?
This question pertains to Section 1 of Act 558 of 2011, which amends A.C.A. § 24-4-402(b) and (c) concerning contributions of state and local government division employers to add a requirement that contributions be made for certain retired members:
 (b)(1) The state employer contributions shall be a set percentage rate of the compensations of state employees who are active members as well as those retired members who have returned to work under § 24-4-520. The rate of percentage shall be set by the Board of Trustees of the Arkansas Public Employees' Retirement System as provided for by § 24-2-701.
 * * * (c)(1) The employer contributions to be paid by each participating public employer, other than the state, shall be a set percentage rate of the compensations of its employees who are active members as well as those retired members who have returned to work under § 24-4-520. The rate of percentage shall be set by the board as provided for by § 24-2-701.
(Emphasis added.)
The emphasized reference to "those retired members who have returned to work under § 24-4-520" was added to the statute by Act 558, which becomes effective January 1, 2012.[1] This language refers to those who returned to work after terminating covered employment for the amount of time required by A.C.A. § 24-4-502 to be eligible for retirement.[2] *Page 3 
Under current law, employer contributions are calculated based upon the compensation of APERS "members."[3] No contribution is made for those who have retired because a person ceases to be a "member" upon his or her retirement.[4] When Act 558 becomes effective, employer contributions will be collected on the compensation of those who have retired in accordance with A.C.A. § 24-4-520 by separating from employment for the required amount of time before returning to work. I believe it is clear that this encompasses all those who, on and after January 1, 2012, meet section 24-4-520's requirements to retire. By its plain language, Act 558 applies to "active members" and "those retired members who have returned to work." This plainly includes those who terminated covered employment for the requisite period and then returned to work before January 1, 2012. These persons are "retired" as contemplated by section 24-4-520.
This interpretation of Act 558 is buttressed, moreover, by the actuarial analysis that was prepared for the Joint Committee on Public Retirement and Social Security Programs in connection with Senate Bill 127 of the 88th General Assembly (now Act 588 of 2011).[5] This cost study, a copy of which is enclosed for your convenience, clearly assumes that the bill would require employers to make contributions for all current employees, including those who have returned to work after retiring.
It should perhaps be noted, however, that no contributions will be required with respect to periods of employment occurring prior to the effective date of Act 558. To conclude otherwise would require retroactive application of the act, whereas legislation is generally presumed to operate prospectively only and will be so construed unless retroactive application is expressly provided for or "implied so *Page 4 
clearly and unequivocally as to eliminate any doubt." Estate ofWood v. Arkansas Dep't of Human Serv.,319 Ark. 697, 700-701, 894 S.W.2d 573 (1995). There is no indication that the General Assembly intended employers to make contributions for a retired member's previous period of employment.
Question 2 — Does it also apply to ALL employees on the DROP, orjust those who join the DROP after January 1, 2012?
This question involves Section 2 of Act 558 of 2011, which amends A.C.A. § 24-4-802(d) regarding employee and employer contributions for DROP participants. Currently, no contributions are made on behalf of DROP participants: "When a member begins participation, both employee and employer contributions to the system on behalf of the member shall cease."[6] Act 558 amends this provision to provide as follows:
When a member begins participation in the plan, the:
 (1) Employee contributions to the system on behalf of the member shall cease; and
 (2) Employer contributions to the system on behalf of the member shall continue.[7]
Act 558 therefore does not change current law respecting cessation ofemployee contributions, but instead institutes a new employer contribution requirement with respect to those who enter DROP. The prefatory words: "[w]hen a member begins participation in the plan," is not new language. It was part of the original statute, and it refers to a member's election to participate in DROP in lieu of terminating employment and accepting a retirement benefit.[8] In my opinion, this prefatory *Page 5 
language encompasses all those who have elected to participate in DROP, and not only those who join after January 1, 2012. To conclude otherwise would assume that the legislature used this pre-existing language to signal Act 558's limited application to future participants only. That assumes too much, in my opinion.
It also ignores the law's reported fiscal impact, which is reflected in the actuarial cost study noted above (and enclosed herein). As you can see from the enclosure, the study calculates the additional revenue to APERS if employers of "members currently on DROP . . . paid the employer rate during the 2011-12 fiscal year."[9] The study observes that "[t]hese additional contributions would reduce future cost in the form of a gain to the system and serve to decrease the unfunded liability of the system in the future."
Act 558 was enacted based upon this legislatively-mandated actuarial study.[10] This legislative history confirms legislative intent to require employer contributions for all employees who participate in DROP, including those who joined before January 1, 2012. For the reason stated above in response to your first question, however, it is my opinion that no contributions will be required with respect to periods of DROP participation before Act 558's effective date.
Deputy Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Acts 2011, No. 558, § 3 ("Sections 1 and 2 of this act are effective on and after January 1, 2010.")
[2] Section 24-4-502 is concerned with the subject of termination of employment for retirement eligibility, and limitations on returning to employment after termination of employment. With certain exceptions, section 24-4-520 requires that members of the Arkansas Public Employees' Retirement System (APERS) "terminate covered employment" to become eligible for retirement benefits, and that they be terminated from employment for a specified period of time in order to meet the termination requirement. A.C.A. § 24-4-520(a) and (b) (Supp. 2009). See also Acts 2011, No. 40 (defining "terminate" under A.C.A. § 24-4-520 so as to clarify eligibility for retirement) and No. 774 (extending the requisite termination period for certain individuals). Thus, certain retirees may return to employment and still be eligible for retirement. Those who fail to meet the termination requirements, however, forfeit their benefits until the requirements are met. A.C.A. § 24-4-520(d).
[3] A.C.A. § 24-4-402(b)(1) and (c)(1) (Supp. 2009).
[4] A.C.A. § 24-4-304(b)(1) (Supp. 2009). See also
A.C.A. § 24-2-701(a) (Supp. 2009) (regarding contributions "expressed as percentages of active member payroll. . . .") (Emphasis added.)
[5] This analysis is required by A.C.A. § 10-3-702 (Supp. 2009), which applies to bills relating to the public retirement systems. This statute requires an evaluation of the "estimated cost or fiscal impact of the bill upon the State of Arkansas and its various agencies and upon the actuarial soundness of the retirement systems."Id. at (b)(1).
[6] A.C.A. § 24-4-802(d) (Supp. 2009).
[7] Acts 2011, No. 558, § 2 (emphasis added).
[8] A.C.A. § 24-4-801(a) (Supp. 2009) ("In lieu of terminating employment and accepting a retirement benefit under the Arkansas Public Employees' Retirement System pursuant to §§ 24-2-201 et seq. and24-4-101 et seq., any person who is a member of the system and who meets the conditions specified in subsection (b) of this section may elect to participate in the Arkansas Public Employees' Retirement System Deferred Retirement Option Plan and to defer the receipt of retirement benefits in accordance with the provisions of this subchapter."). Under the plan, the individual continues employment, and a certain percentage of the monthly benefit to which the member would have been entitled if he or she had retired is paid into the member's DROP account. Id. at-803. Upon separation from service, the member may elect to receive the balance in the DROP account as either a lump sum or a monthly benefit. Id. at-804.
[9] The employer contribution rates are actuarially determined pursuant to A.C.A. § 24-4-402(b)(1) and (c)(1) (Supp. 2009) and A.C.A. § 24-2-701(c)(3) (Supp. 2009).
[10] See n. 5, supra.
 *Page 1